IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VIRGINIA ROBINSON,

        Plaintiff,               No. CIV S-07-1408 EFB

       vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.         ORDER
_____/

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court denies plaintiff's motion for summary judgment and grants the Commissioner's cross-motion for summary judgment.

I. BACKGROUND

       Plaintiff, born January 10, 1947, applied for DIB and SSI on May 2, 2005, alleging she became unable to work on January 1, 1999 due to "loss of use of right arm, rt knee, bone spur in rt foot, HBP [high blood pressure]." Administrative Record ("AR") 44-46, 50. Plaintiff explained, "I get too much pain in my leg, and it swells too much. I also have pain in my arms and my back." AR 50. Plaintiff stated that she "did try to work in 2004 but was laid off because

of my condition." AR 51. Plaintiff stated that she previously performed work as a secretary (1984-87, 1989, 1990-94, and 1997-98), cashier/clerk (1992-93), house manager for a recovery house (1995), and taxi driver (1997-98), and most recently trained to be a bus driver (2004). AR 51; *see also* AR 52, 57-64, 68-74.

At the October 4, 2006 hearing before administrative law judge ("ALJ") Howard K. Treblin, AR 287-306, plaintiff testified, with the assistance of counsel. Initially, plaintiff amended her alleged onset date to April 11, 2004, the date she sustained a fall. AR 290-291. Plaintiff testified that she most recently delivered newspapers for a period of four months. AR 293. She drove a taxi for about five years. TR 293, 294. She performed secretarial work for about twenty years. *Id.* She was a cashier at one of her jobs and trained as a bus driver. *Id.*

Plaintiff testified that she is 59 years of age, 5'6" tall and weighs 195 pounds. AR 291-292. She testified that she has gained weight since her fall in 2004, and has weighed as much as 240 pounds. AR 292. Plaintiff stated that she is married, that her husband was disabled, is now retired but battling cancer. AR 292, 302. Plaintiff stated that she gets along all right with others, that the highest grade of school she completed was 14, that she drives, can read and write, and compute numbers. AR 292-293, 292, 299. Plaintiff testified that she can focus and pay attention, but has difficulty doing so because of her pain. AR 299.

Plaintiff testified that she was in a car accident thirty years ago, when her physical problems began. AR 305. Responding to her attorney's observation that plaintiff's x-rays show significant arthritis or spurs, plaintiff stated that her problems have been ongoing, but increased significantly with her 2004 fall. AR 304-305.

Plaintiff testified regarding her fall, "I was helping move a piano, and it fell on me." AR 293. She later explained, "I was moving, helping to move a piano, and it fell on my leg, and my knee was very injured. It was already a bad knee, and then it just totaled it. So, my knee became very bad, my ankle again, and my back. My back hurt really bad, and after that, I just had a lot more pain." AR 304.

Asked about her other medical problems, plaintiff responded, "I have problems with my neck, with my back, with my lower back, with my upper right extremity, with my hands, with my right knee, my right ankle, and I have problems with my left knee and left ankle." AR 294. She stated that she takes Vicodin for pain, and it helps, without side effects. *Id.* She also takes medication for blood pressure, and Trazidone to sleep. *Id.* Plaintiff testified that sometimes it's hard to go to sleep, and she wakes up a lot, due to pain, but the medication helps. AR 299. She gets four to eight hours of sleep a night, usually wakes up at 10 am, and feels rested. AR 300.

Plaintiff rated her pain, on an ascending scale of 0 to 10, as a "10" on a "bad" day, and a "7 or 8" on a "good" day, and testified that she probably has more bad days than good and, overall, is probably getting worse. AR 294-295. Resting helps her feel better, laying down and putting her feet up, and she does this six to eight hours a day. AR 295, 303. She feels worse when she walks too much or tries to do too much work around the house. *Id.* Plaintiff testified that she uses a cane when she feels she needs it, probably daily and just when she goes out; that she uses a walker when she is having a real bad time, about three times a week. AR 296. Plaintiff did not bring a cane to the hearing. *Id.* Plaintiff stated that she has fallen a few times but takes medication for vertigo which helps. *Id.*

Plaintiff sees her doctor "periodically probably monthly," who referred plaintiff to a physical therapist April 2004. AR 295-296. Dr. Lindquist, who provided a report, was plaintiff's treating physician "years ago." AR 305.

Plaintiff testified that she was treated for depression, but stopped going for treatment because she was feeling better, and does not assert this as a basis for disability. AR 304.

Plaintiff estimated that she can lift or carry up to ten pounds, but cannot lift over her head. She estimated that she can sit fifteen minutes to a half hour before she needs to get up and move around; that she can stand or walk five or ten minutes before she has to stop. AR 297. Plaintiff testified that she could bend to mid-calf. AR 297-98. Plaintiff testified that she injured her right hand and arm a few years ago, that she gets cramps in both hands when using them to

3

doing something, like wash dishes or write, that she drops things daily from her right hand. AR

298-99. Plaintiff stated that she used to sew, but can't now. AR 301. She gardens a little. *Id.*

Plaintiff testified she has difficulty getting in and out of the tub or shower, but does not

have handrails or handles to help. AR 300. She does not need assistance bathing. *Id.*

Plaintiff testified that she does light household chores, but her husband does the

vacuuming, light cleaning and dusting. AR 300-301. He also "cleans the floors, he cleans the

bathroom, he cleans the walls, and he does the dishes and keeps the kitchen clean." AR 302.

Plaintiff testified that if she did these things, "I'd just get in a really lot of pain," particularly in

her back and knees. AR 302-303. Plaintiff stated that she grocery shops a couple of times a

week. AR 301.

The ALJ issued a decision on March 8, 2007, finding that plaintiff is not disabled.[1] AR

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater,* 81 F.3d 821, 828, n. 5 (9th Cir. 1995).

12-18. The ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2004.

2. The claimant has not engaged in substantial gainful activity since April 11, 2004, the amended alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3. The claimant has the following severe impairments:  polyarticular arthritis, obesity, hypertension (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light level work activity on a sustained basis.  The claimant can stand and or walk 6 hours; sit without limitation; lift and or carry, push and or pull 20 pounds on occasion and 10 pounds frequently; stoop, bend, crouch, frequently, no limitations with manipulative functions; no non-exertional limitations; no environmental limitations.

6. The claimant is capable of performing past relevant work as a clerical/secretary.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 415.965).

7. The claimant has not been under a disability, as defined in the Social Security Act , from April 11, 2004, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

*Id.*

On May 23, 2007, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. AR 4-6.

*////*

*////*

*////*

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Bowen*, 482 U.S. at 146, n. 5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

II. **ISSUES PRESENTED**

Plaintiff contends that the ALJ erred by: (1) failing to develop and properly evaluate the medical record; (2) failing to credit plaintiff's statements regarding her pain and functional limitations; and (3) finding that plaintiff can perform her past relevant work at step four of the sequential analysis.

III. **LEGAL STANDARDS**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278  F.3d 947, 954 (9th Cir. 2002).

IV. **MEDICAL EVIDENCE**

A. **Radiology Reports, 2004**

////

////

### 1. April 4, 2004

On April 4, 2004, an x-ray of plaintiff's right ankle demonstrated the following:

There is a moderate amount of soft tissue swelling about the right lateral malleolus. The osseous structures appear intact with no fracture seen. There is an 8 mm spur seen along the inferior aspect of the right calcaneus. There is a spur along the anterior aspect of the distal right tibia. Impression: No fracture.

AR 281.

### 2. April 21, 2004

On April 21, 2004, an x-ray of plaintiff's right heel, taken due the possible presence of a

"foreign body," found:

There is a prominent calcaneal spur. There is no fracture or subluxation or metallic or nonmetallic foreign body identified.

AR 279.

### 3. May 9, 2004

On May 9, 2004, plaintiff had several x-rays, with the following findings:

(i) Right tibia and fibula

Findings: "No evidence of fracture. Mild soft tissue edema of the calf is suggested."

(ii) Right femur

Findings: "There is no evidence of fracture. Bones and soft tissues appear normal."

(iii) Right hip

Findings: "No evidence of fracture. Hip joint and SI [sacroiliac] joint appear normal."

Impression: "Normal-appearing right hip."

(iv) Right knee

Findings: "Rather extensive degenerative changes are present with joint narrowing, sclerotic and cystic changes and marginal spurring. Findings involve the three compartments. There is no evidence of bony injury."

////

Impression: "Rather marked three compartment DJD [degenerative joint disease]. No acute changes."

(v) Right ankle

Findings: "Compare 04/04/04. Soft tissue swelling is present. Mortise is normal. No evidence of fracture. Healed spur is again noted."

Impression: "Soft tissue swelling. Plantar heel spur. No acute bony abnormality." AR 276-277.

B. San Mateo Medical Center, Hillsdale Urgent Care and General Hospital January 1997- February 2004 Treatment Notes

These records reflect treatment primarily for upper respiratory infections, sinusitis, and earache. AR 100-192.

C. San Joaquin General Hospital, April 2004-June 2006 Treatment Notes

These records, AR 192-221, 253-286, commence with plaintiff's emergency room treatment on April 4, 2004. The admission note indicates that plaintiff "fell down 4 stairs yesterday. Rt foot and ankle swollen and ecchymotic in color. Moves toes freely. + pulses." AR 215. X-rays, noted *supra*, found a "moderate amount of soft tissue swelling," but no fracture. AR 214.

On May 9, 2004, plaintiff was again seen in emergency care. She stated, a "piano feel on R leg 2 hr ago." AR 216. The following was noted: "Abrasion to Rt thigh and leg with bruising and swelling. Swelling to ankle []. Can move toes." *Id*. X-rays, noted supra, found no evidence of fracture, but "rather extensive degenerative changes" in plaintiff's right knee and a healed right heel spur. AR 276-277. In a follow-up appointment at the orthopedic clinic on May 13, 2004, plaintiff was instructed to use a knee splint, crutches and a wheelchair as needed. AR 217. Further follow-up on May 27, 2004 recommended continued use of knee brace and crutches. AR 219. On June 24, 2004, orthopedist Dr. Stephen Gaal noted that plaintiff's knee was "much improved," and recommended physical therapy. Plaintiff was instructed to return in 6 months,

and to work toward no use of crutches.  AR 218.  There are two physical therapy notes in September 2004, which note improvements in the strength and range of motion of plaintiff's right knee.  AR 220, 221.  Physical therapy progress notes in November and December 2004 indicate that plaintiff was able to go up and down stairs using handrails, but a friend was building her a ramp; plaintiff reported difficulty standing, and stiffness with prolonged sitting.  AR 203-205.  Physical therapy was discontinued December 17, 2004 based on "limited improvement since last month," and noting "Pt admits to not doing home exercises very often, plans to buy a stationary bike."  AR 203.

On October 7, 2004, plaintiff was seen in emergency for complaints of "Woke up yesterday with dizziness.  Today woke up even dizzier.  Having cold and congestion and suspects may have inner ear infection."  AR 207.  A follow-up October 27, 2004, shows diagnosis of bronchitis and high blood pressure.  AR 208.

On February 4, 2005, plaintiff was again seen in the orthopedic clinic for follow up of her right knee injury.  AR 196.  She complained of pain in her right knee and ankle, left shoulder, neck and hip.  Dr. Gaal found these areas to be "WNL" (within normal limits), diagnosed shoulder tendinitis, declined plaintiff's request for Vicodin, and prescribed Motrin and moist heat.  *Id.*

Plaintiff sought emergency care on November 2005, for chest congestion and right ear pain.  AR 273.

Plaintiff was again seen by Dr. Gaal in the orthopedic clinic in February 2006.  AR 268, 269.  On February 3, 2006, plaintiff stated she had slipped and fallen at home on December 9, 2005, reinjuring her right ankle, and was having pain in her lower back to right buttocks, and pain in her knees.  Dr. Gaal diagnosed lower back pain with right sciatica, and ankle antropathy; he prescribed conservation ROM (range of motion), moist heat, and provided prescriptions for Motrin and Vicodin.  AR 269.  Dr. Gall noted that plaintiff was disabled from February 3, 2006 to April 1, 2006.  *Id.*  On February 17, 2006, Dr. Gall stated that "findings similar to 2/3," and

extended plaintiff's disability to June 2006; however, Dr. Gall declined to sign documents plaintiff brought in support of her social security claim. AR 268. On March 31, 2006, Dr. Gall continued to recommend conservative treatment, ROM stretching, and moist heat, and prescribed Vicodin and physical therapy. AR 263.

Plaintiff sought emergency care on March 1, 2006, for possible abscess on her left wrist due to cat bites. AR 259. Plaintiff had some complications and the abscess needed to be drained, and additional medications given. AR 256-258. On May 16, 2006, Dr. Gaal recommended that plaintiff exercise her left hand and wrist by, for example, crumbling paper. AR 255. Further examination by Dr. Gaal on May 26, 2006 noted that plaintiff's wrist had healed well, despite a thick scar, that plaintiff's back on exam was diffusely tender with good range of motion within normal limits, and that her knees and ankles were normal on exam. Dr. Gaal recommended conservative treatment with home exercise. AR 254.

On June 16, 2006, plaintiff reported to the family practice clinic knee, ankle and back pain at a level "10" on an ascending scale of 1 to 10. AR 253. Plans were made to obtain a physical therapy assessment for plaintiff's disability application. *Id*. It was also noted that plaintiff's glucose level was pre-diabetic, and the examiner discussed diet and provided a medication sample. *Id*.

D. Physical Therapist Robert A. Burke

Robert A. Burke, a physical therapist at San Joaquin General Hospital, prepared a written report dated October 2, 2006, and completed a "Medical Assessment of Ability to Do Work-Related Activities (Physical)," based on examination of plaintiff August 22 and 29, 2006. AR 245-251. Based on his clinical findings[2] and the x-ray evidence, Mr. Burke opined that plaintiff

---

[2] Mr. Burke made the following objective findings: "SLR 25% - Bilateral . L-spine flex to mid shin, ext. 25%, bilateral side bend to mid thigh. Left Rotation to 50%, MMT right hip flex 3+15, left 4/5, knee ext. 4/5. Knee Rom: Left 10- 115 degrees, Right 8-104  degrees. Neck Rom: flex 100%, ext 50%, SB 50% Rotation 70%. Left hip flex to 90 degrees, Internal Rotation 5 degrees. Antalgic gait." AR 245.

can lift up to ten pounds frequently and 20 pounds occasionally; sit, stand and walk one hour each in an 8-hour workday (based on, "Increased back or knee pain with sustained static position – sitting and when walking or standing more than 15 minutes"); fine manipulation of plaintiff's left hand, and bilateral use of her feet, were limited to occasional use (based on, "Standing and walking cause increased pain. Numbness and radicular pain in arms and legs impact use of hands and feet"). AR 247. Mr. Burke opined that plaintiff can frequently feel and reach, but only occasionally handle and push/pull. AR 248. Mr. Burke further opined that plaintiff can continuously "balance" and occasionally stoop, but she should never climb, crouch, kneel or crawl. *Id.*

E. Dr. Paul R. Linquist, August 31, 2006 Treatment Note

Dr. Linquist wrote a one-page report that begins:

> I took care of this patient when she was about 29-years-old and I was practicing at the San Mateo Clinic when she was in a bad automobile accident and had multiple injuries including neck, low back and right knee injuries. At that time she ended up with what she remembers as a 30% disability of her right upper extremity because of neurologic deficits. Through the years she has not done terribly well and she has gone on to develop increased troubles. Part of this was aggravated by some injuries when she was moving some heavy objects.
>
> She describes having trouble not only in her neck and right upper extremity but also in her low back, especially in the right knee, the right ankle and the left hip.

AR 244.

////

////

////

////

////

////

////

Dr. Linquist examined plaintiff,[3] and reviewed her x-rays,[4] and concluded:

> Based on what I see with this patient today I think that she is definitely disabled
> from multiple difficulties including severe degenerative disc disease in the
> lumbosacral spine, moderately severe arthritis in the left hip, very severe arthritis
> in the right knee, and moderate arthritis in the right ankle as well as residuals
> from her old injury to the cervical spine and weakness in the right upper
> extremity. I think this patient is disabled for the purpose of social security.

AR 244.

E. <u>Consultative Examiner Michael Nwude, M.D.</u>

On July 30, 2005, internist Michael Nwude, M.D., evaluated plaintiff at the request of the

Commissioner. AR 222-225. Plaintiff stated that she has had, since age 28, pain in her right

ankle, right knee, back, right arm, and left hip. Following an accident in which a piano fell on

her right knee, she has had increased pain in her right knee and ankle. She takes Motrin which is

"somewhat helpful." Plaintiff walked with a cane, but her coordination, station and gait were

normal. AR 223. Dr. Nwude noted, upon examination, that plaintiff "has tenderness along the

lumbar spine with paravertebral muscle spasms." AR 224. After physical examination,

including review of plaintiff's ranges of motion, strength, reflexes and sensory responses and

reflexes, Dr. Nwude diagnosed plaintiff with polyarticular arthritis, exogenous obesity,

hypertension, sinusitis, menopausal syndrome, and right heel pain, AR 225, and made the

following functional assessment:

////

---

[3] Dr. Linquist's examination of plaintiff found "gets up with difficulty and can walk
without support," "uses a cane at time," and "has an obvious abductor lurch on the left hip;" has
"mild restriction of motion of the cervical spine;" "some weakness in [her] right upper
extremity;" "no extension" but "reasonably good flexion," and "very poor lateral bending and
rotation" of the lower back; "good motion in the right hip but marked limitation of motion of the
left hip;" "swelling and some tenderness" in the left knee, but good range of motion; and a "little
tenderness anteriorly" in the right ankle. AR 244.

[4] In addition to the x-ray results noted supra, Dr. Linquist referenced x-rays not in the
record that reportedly demonstrate "severe degenerative disc disease in the lumbosacral spine
with virtual complete loss of joint space at L4-5 and lesser degenerative changes above that."
AR 244; *see also* Pl.'s Mem., at p. 3, n. 2.

The number of hours that this claimant could be expected to stand and walk in an eight-hour workday is about six hours because of right heel pain and polyarticular arthritis. This claimant could be expected to sit with no limitations in an eight-hour workday. Assistive device is a walking cane. The amount of weight this claimant could carry frequently is 20 pounds. The claimant has no postural limitations on bending, stooping, crouching and so on and she can perform these frequently. The claimant has no manipulative limitations on reaching, handling, feeling, grasping and fingering and she can perform these frequently, The claimant has no relevant visual, communicative, or workplace environmental limitations.

*Id.*

F. State Agency Physician David Pong, M.D.

Dr. David Pong reviewed plaintiff's records and completed a "Physical Residual Functional Capacity Assessment." AR 226-233. Dr. Pong opined that plaintiff can carry and lift ten pounds frequently and twenty pounds occasionally; stand, walk and sit for six hours each in an eight-hour workday; push and pull without limitation; and no postural, manipulative, visual, communicative or environmental limitations. Dr. Pong noted that plaintiff "[s]eems to have healed from injuries sustained when piano fell on her. Has normal gait, station & coordination. Should not need cane." AR 231.

IV. ANALYSIS

A. TREATING OPINIONS

Plaintiff contends that the ALJ erred by rejecting the opinions of plaintiff's treating physician (identifying Dr. Linquist) and her physical therapist (Mr. Burke), and by failing to develop the record to resolve any concerns the ALJ may have had about these records. The ALJ instead relied on the opinions of consultative examiner, Dr. Michael Nwude, and nonexamining consultant Dr. David Pong.

Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir.1995); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.1996); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987).

The ALJ rejected the opinion of Dr. Linquist for the following reasons:

> I have reviewed the one page report of Paul Linquist. There is no indication if he
> is an acceptable source or his specialty. The report indicates that he "took care" of
> the claimant when she was 29 years old. The report is dated August 31, 2006 and
> appears to be a 1 time examination of the claimant. . . . While he opines that the
> claimant is disabled, the totality of the evidence does not support this conclusion
> which is reserved to the Commissioner. This report does not recommend any
> treatment of a conservative or surgical nature. There are no supporting treatment
> records. Consequently, this report and opinion are given little weight.

AR 17.  The ALJ rejected the opinion of Mr. Burke for the following reasons :

> The undersigned has considered the report of Mr. Burke who is not a treating
> physician and is not an acceptable medical source.  He opined that the claimant
> cannot sustain even sedentary work on a continuous basis (Exhibit 7F).  However,
> the relatively benign findings of Dr. Nwude and the treatment records at exhibit
> 2F, 3F and 7F do not support the extreme degree of limitation stated by Mr.
> Burke.  This opinion is further controverted by the opinion of Dr. Pong.

AR 16.

The ALJ relied instead on the consultative reports of Dr. Nwude and Dr. Pong,

reasoning:

> The consultative examination report from Dr. Nwude confirms that
> the claimant can perform light level work activity on a sustained basis
> (Exhibit 4F). This opinion is further supported by Dr. Pong of the
> DDS who opined that the claimant can perform the full range of light
> level work activity on a sustained basis.

*Id*.  The ALJ described Dr. Nwude's findings as follows:

> Dr. Nwude noted that the claimant's motor function was 5/5; normal reflexes;
> range of motion normal.  The claimant did have tenderness along the lumbar
> spine with muscle spasm and he did note obesity.  However, his functional
> assessment did take these problems into consideration.  An opinion of light work
> ability was rendered and is credible. . . . Dr. Nwude noted that the claimant may
> need to use a can when walking.  However, this appears to be based upon the
> claimant's subjective complaints since his findings were consistent with the
> ability to perform light level work.

*Id.*

Plaintiff contends that the ALJ should have sought plaintiff's treatment records from Dr.

Linquist, "to clarify the extent of his actual treatment of her," rather than discrediting his opinion

because it appeared to be a one-time examination. Pl.'s Mem., at p. 12. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff argues that the ALJ should have been alerted by the statement of plaintiff's counsel at the hearing that Dr. Linquist was plaintiff's "long-time physician." AR 280. However, this argument fails to acknowledge plaintiff's own statement that Dr. Linquist had treated her "years ago," AR 305, and that there is nothing in Dr. Linquist's report to convey an ongoing treatment relationship. Rather, Dr. Linquist states that he "took care of this patient when she was about 29-years-old, and that she "is now 59-years-old and comes in to see us regarding various orthopedic issues." AR 244. Attempting to obtain records from treatments occurring 30 years ago would add nothing of relevance to the issues that were before the ALJ. Moreover, since the record appears to contain all relevant and contemporaneous treatment notes (as well as plaintiff's treatment records since 1997), it cannot be said that the record was inadequate or the evidence ambiguous, necessitating further development. Accordingly, the court finds that the ALJ had no duty to seek additional records from Dr. Linquist.

Nor can Dr. Linquist properly be characterized as plaintiff's treating physician for present purposes, requiring greater deference to his opinion. Rather, Dr. Gaal was plaintiff's primary treating physician, and he declined to support plaintiff's application for disability, instead prescribing only ongoing conservative treatment.

Plaintiff argues that the ALJ should nonetheless have accorded greater weight to the opinion of Dr. Linquist rather than the opinion of Dr. Nwude, because Dr. Linquist reviewed all of plaintiff's x-rays, while Dr. Nwude reviewed only isolated treatment notes. However, since both physicians were one-time examiners, the ALJ was free to consider which of their examinations was more thorough and reports more probative. The ALJ may resolve such a conflict by relying the opinion best supported by independent clinical findings. *See Andrews v.*

*Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (ALJ may even reject opinion of treating physician in favor of examining physician whose opinion rests on independent clinical findings).  While plaintiff is correct that,"[w]here a claimant's condition is progressively deteriorating, the most recent medical report is the most probative," *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986), this rule does not trump other important controlling law, including that pertaining to a claimant's credibility, discussed *infra*. The court therefore finds that the ALJ gave legally sufficient reasons, supported by substantial evidence of record, for rejecting the opinion of Dr. Linquist.

Plaintiff also challenges the ALJ's rejection of the opinion of physical therapist Mr. Burke that plaintiff cannot perform even sedentary work.  The ALJ's threshold rejection of this opinion as not from an "acceptable medical source," was admittedly severe.[5]  However, as the ALJ properly explained, "the relatively benign findings of Dr. Nwude and the treatment records at exhibit 2F, 3F and 7F do not support the extreme degree of limitation stated by Mr. Burke. This opinion is further controverted by the opinion of Dr. Pong."  AR 16.  These conclusions are supported reasons for relying on the opinions of these medical practitioners.  The Commissioner is authorized to accord greater weight to the opinions of treating professionals with greater expertise.  *See, e.g.*, 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5).  The court finds that the ALJ gave legally sufficient reasons, supported by substantial evidence of record, for rejecting the opinion of Mr. Burke.

////

////

[5] As plaintiff notes, such opinions may, at the ALJ's discretion, be evaluated pursuant to 20 C.F.R. §§ 404.1513(d), 416.913(d), which provide that "in addition to evidence from the acceptable medical sources [licensed physicians, etc.], we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to (1) Medical sources not listed in paragraph (a) of this section (for example, nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists)."  *See also* Social Security Ruling 06-03p.

B. CREDIBILITY ASSESSMENT

Plaintiff contends that the ALJ erred by failing to credit plaintiff's statements regarding her pain and functional limitations.

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *Id.* at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See, e.g., Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ discredited plaintiff's subjective complaints for the following reasons:

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. . . .

While the claimant does have pain and limitation, her course of treatment has been conservative. No surgery is recommended or planned. Her allegations of disabling pain and limitation are not wholly credible. The claimant testified that she is able to do light chores. She is able to shop. She feel rested after a nights sleep. She is able to cook. She testified that she does not have any side effects from the medications that she is using. She is able to drive and drove to the hearing. She indicated that if she walks or stands too much her pain worsens. Even when giving the claimant the benefit of the doubt and limited her residual

17

functional capacity to the sedentary level, she is still able to perform her past relevant work.

AR 16, 17.

These are clear and convincing reasons for discrediting plaintiff's subjective complaints, specifically, that plaintiff has had only conservative treatment, her pain medication is helpful without side effects, she wakes up feeling rested, she is able to drive and shops twice a week, and she is able to perform light housework. In addition, as noted elsewhere by the ALJ, plaintiff's use of a cane is discretionary and not inconsistent with plaintiff's ability to perform light level work, AR 16, underscored by the fact that plaintiff she did not use her cane at the administrative hearing, and testified that she only uses it when she goes out if she feels she needs it, AR 296.

The court further notes that plaintiff conceded to her first physical therapist that she was not maintaining her home exercise routine. AR 203. "[A]n unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment . . . cast[s] doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); Social Security Ruling 96-7p.

The court therefore finds that the ALJ set forth clear and convincing reasons for discrediting plaintiff's subjective complaints.

C. STEP FOUR ANALYSIS

Plaintiff contends that the ALJ erred by finding that plaintiff can perform her past relevant work at step four of the sequential analysis, and that he should have proceeding to step five and obtained the testimony of a vocational expert.

Plaintiff does not dispute that her past relevant work was primarily as a secretary, which requires a residual functional capacity to perform sedentary to light work. *See* Dictionary of Occupational Titles, U.S. Dept. of Labor (4th Ed. Rev. 1991), DOT 201.362-030 (Secretary (clerical)). The ALJ found that plaintiff can perform light level work, and thus, remains

capable of performing her past relevant work as a secretary.  AR 15, 17.  This finding is consistent with the limitations assessed by Dr. Nwude and Dr. Pong, upon which the ALJ properly relied.  The many nonexertional limitations found by Mr. Burke, and properly rejected by the ALJ, are therefore not relevant to this analysis.  The ALJ was not required to proceed to step five and obtain the testimony of vocational expert.  *See Schneider v. Commissioner of Social Security*, 223 F.3d 968, 974 (9th Cir. 2000) ("If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps.").

VII.  <u>CONCLUSION</u>

       For the foregoing reasons, IT IS HEREBY ORDERED that:

       1.  Plaintiff's motion for summary judgment, Dckt. No. 26, is denied;

       2.  The Commissioner's cross-motion for summary judgment, Dckt. No. 29, is granted; and,

       3.  The Clerk is directed to enter judgment in favor of the Commissioner.

DATED:  March 31, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE